UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

N⁰ 08-CV-5024 (JFB) (WDW)
_____

MICHAEL PUGLISI,

Plaintiff,

VERSUS

DEBT RECOVERY SOLUTIONS, LLC,

Defendant.
_____

**MEMORANDUM AND ORDER**
January 26, 2010
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Michael Puglisi ("Puglisi" or "plaintiff") brings this action alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, by defendant Debt Recovery Solutions, LLC ("Debt Recovery Solutions" or "defendant").

Currently before the Court is defendant's motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, defendant contends that: (1) plaintiff's claims are barred by the FDCPA's statute of limitations; (2) plaintiff has failed to state a claim for which relief can be granted under the FDCPA; and (3) plaintiff cannot allege claims against defendant under the EFTA because defendant is not a financial institution. For the reasons set forth below, the Court concludes that plaintiff has asserted plausible claims under the FDCPA and EFTA that survive a motion to dismiss. Accordingly, defendant's motion is denied in its entirety. Also before the Court is plaintiff's motion for costs of service of process on defendant. Plaintiff's motion is denied.

I. BACKGROUND

A. Facts

For purposes of this motion to dismiss, the Court has taken the facts described below from the plaintiff's Amended Complaint ("Compl."). These facts are not findings of fact by the Court, but rather are assumed to be true for the purpose of deciding this motion and are construed in a light most favorable to plaintiff, the non-moving party. *See LaFaro v. N.Y. Cardiothoracic Group*, 570 F.3d 471, 475 (2d Cir. 2009).

According to the complaint, plaintiff originally owed a debt to Verizon, which defendant Debt Recovery Solutions attempted to collect from plaintiff. (Compl. ¶¶ 3-4.) Defendant is a limited liability corporation based in Westbury, New York, that is regularly engaged in the collection of debts allegedly owed by consumers. (*Id.* ¶¶ 4-5.)

In September 2007, defendant sent plaintiff an initial collection letter for the debt. (*Id.* ¶ 10.) Plaintiff and defendant's representative entered into a payment plan in late October 2007 or early November 2007, under which defendant would withdraw two payments from plaintiff's account. (*Id.* ¶¶ 11-13.) Defendant sent plaintiff a letter memorializing that agreement; under its terms, plaintiff would send a payment of $100.00 to be received by November 23, 2007, and a payment of $154.38 to be received by December 23, 2007. (*Id.* ¶ 14.) According to defendant's note history, plaintiff's initial payment was to be made on November 16, 2007, but plaintiff contacted defendant and requested that defendant withdraw the funds one week later, on November 23, 2007. (*Id.* ¶¶ 16-18.) According to plaintiff, defendant nonetheless attempted to withdraw the funds from plaintiff's account on November 16, 2007. (*Id.* ¶ 19.) This caused plaintiff to incur fees for checks returned for insufficient funds. (*Id.* ¶ 20.) The defendant agreed to refund plaintiff $60.00 in bounced check fees, which defendant sent to plaintiff on December 7, 2007. (*Id.* ¶¶ 23-24.) There is no indication in the complaint that the $100 payment was ever made by plaintiff.[1]

Thereafter, plaintiff alleges that he lost his job; plaintiff contacted defendant regarding the next payment in December 2007, within one year of the filing of the complaint. (Compl. ¶¶ 26-29.) Plaintiff alleges that he spoke with a female employee of defendant in order to negotiate the timing of the December 2007 payment to defendant; according to plaintiff, the employee told plaintiff, "No, we will not touch your account any further." (*Id.* ¶¶ 29-32.) According to plaintiff, defendant nonetheless withdrew the remaining funds via electronic transfer, without plaintiff's authorization, on December 17, 2007. (*Id.* ¶ 44.)

Subsequent to December 16, 2007, the defendant sent the plaintiff an undated letter that stated in part: "Repayment term: 100.00 was due on 12/16/2007." (*Id.* ¶ 49.) The letter further stated that there was a balance due of $125.00, and also stated in part: "Specific terms of repayment were agreed upon and acknowledged. As of this date, you are in default of this payment arrangement and your immediate response is required in order to avoid additional collection efforts." (*Id.* ¶¶ 54, 57.) According to plaintiff, plaintiff and defendant never agreed that $100.00 would be due on that date. (*Id.* ¶¶ 51, 53.) Plaintiff further alleges that, upon information and belief, the $125.00 balance reflects the "$100.00 remaining amount plus a charge for a bounced check fee incurred by the defendant," in violation of New York General Obligations Law § 5-328, under which the maximum fee for a check returned for insufficient funds is $20.00. (*Id.* ¶¶ 65-67.) Accordingly, plaintiff alleges that defendant has violated the FDCPA by engaging in deceptive and unfair practices and making false threats against plaintiff. Plaintiff also alleges that, prior to the electronic funds transfer on December 17, 2007, the defendant

---

[1] In fact, plaintiff's supplemental letter to the Court on January 24, 2010, confirms that this $100.00 payment was never made. (Letter from Pl.'s Counsel to the Court (Jan. 24, 2010).)

2

failed to provide plaintiff with the proper disclosures required by the EFTA for electronic transfers. (*Id.* ¶ 78.)

### B. Procedural History

On December 12, 2008, plaintiff initiated the instant action. On May 25, 2009, plaintiff moved by letter for the costs of serving defendant. On June 11, 2009, defendant submitted a letter in opposition to plaintiff's motion for costs. On October 15, 2009, plaintiff filed an Amended Complaint in the action. On November 23, 2009, defendant moved to dismiss the Amended Complaint. Plaintiff filed opposition papers on December 24, 2009, and the reply was filed on January 5, 2010. Oral argument was held on January 22, 2010. This matter is fully submitted.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the Amended Complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). The plaintiff must satisfy a "flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. The Court instructed district courts to first "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, if a complaint contains "well-pleaded factual allegations[,] a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57).

## III. DISCUSSION

### A. Statute of Limitations

Defendant claims that plaintiff's action is untimely because the statute of limitations for actions brought under the FDCPA is "one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). This action was commenced on December 12, 2008. Defendant argues that the date on which plaintiff's claim arose was either November 2, 2007, when the initial letter setting out the agreement was sent, or at the latest, on November 16, 2007, when defendant allegedly wrongfully withdrew funds from plaintiff's account. Plaintiff claims that several violations of the FDCPA occurred in December 2007, within one year of the statute

of limitations. Specifically, plaintiff points to "the unlawful withdrawal of funds on or about December 17, 2007; the unlawfully charging $25.00 for the return of insufficient funds; the failure to send a letter indicating that the funds would be withdrawn; [and] the failure to set forth the necessary electronic transfer language prior to the withdrawal of the funds, confusing the plaintiff about how the funds would be withdrawn, which occurred in December 2007." (Pl.'s Mem. of Law at 16.) According to plaintiff, the parties entered into an agreement and understanding in December 2007 that was separate from any violations that occurred in November 2007.

The acts constituting the alleged violations of the FDCPA must have occurred within one year prior to the filing of the complaint in an FDCPA action. *See Wright v. Zabarkes*, No. 07 Civ. 7913(DC), 2008 WL 872296, at *3 (S.D.N.Y. Apr. 2, 2008). In the instant action, the letter allegedly sent by defendant on or about December 16, 2007, including a $25.00 fee for the plaintiff's bounced check, occurred within the statute of limitations on FDCPA claims. Furthermore, plaintiff also states a claim for defendant's early withdrawal of funds from plaintiff's account on December 17, 2007, prior to the date on which the parties allegedly agreed the transfer would occur. "[S]eparate communications that violate the FDCPA can create separate causes of action." *Ehrich v. RJM Acquisitions, LLC*, No. 09 Civ. 2696 (BMC)(RER), 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009). The December 2007 violations to which plaintiff points may be considered separate, discrete violations from those that occurred in November 2007, and accordingly, the statute of limitations has not run on those claims. *See Dyer-Andrews v. Academy Collection Servs., Inc.*, No. 04-CV-01550-REB-OES, 2005 WL 1871120, at *3 (D. Colo. Aug. 5, 2005) ("Assuming the allegations in the Complaint to be true, the June 30, 2003, telephone call can be seen as a discrete violation of the FDCPA."); *see also Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) (discussing *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) and *Calka v. Kucker, Kraus & Bruh, LLP*, No. 98 Civ. 0990(RWS), 1998 WL 437151, at *3 (S.D.N.Y. Aug. 3, 1998)). The causes of action for these alleged violations are deemed to accrue at the time of the FDCPA violation itself, not, as defendant would suggest, at the time the parties agreed to an amended payment timeline. *See McCready v. Harrison*, 67 F. App'x 971, 974 (7th Cir. 2003). Thus, plaintiff's claims for alleged violations of the FDCPA that occurred within one year prior to December 12, 2008 are not barred by the statute of limitations. The Court notes, however, that to the extent plaintiff's complaint suggests that plaintiff seeks to bring FDCPA claims for any alleged violations in November 2007, those claims are barred by the statute of limitations.[2]

### B. Failure to State a Claim under the FDCPA

### 1. Failure to Plead Violations of the FDCPA with Specificity

Defendant next alleges that plaintiff has not adequately stated a claim for relief under the FDCPA. The FDCPA was created to respond to the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Finding that "[a]busive debt collection practices

---

[2] Counsel for plaintiff conceded at oral argument that these alleged earlier incidents were not separate claims, but simply background to the timely claims.

4

contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," the Act aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(a),(e).

15 U.S.C. § 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Specifically, 15 U.S.C. § 1692e(5) prohibits a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). 15 U.S.C. § 1692e(10) forbids the use of "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." To determine whether a practice falls within this description, courts apply an objective test based on the understanding of the "least sophisticated consumer." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993). "Deceptiveness within the meaning of this subsection includes ambiguity; a collection notice may be deceptive when it can reasonably be read to have two or more different meanings, one of which is inaccurate." *Barrientos v. Law Offices of Mark L. Nichter*, 76 F. Supp. 2d 510, 513 (S.D.N.Y. 1999) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)). "The fact that a notice's terminology was vague or uncertain will not prevent it from being held deceptive under § 1692e(10)." *Id.* A separate section of the FDCPA, 15 U.S.C. § 1692f, provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

Plaintiff has alleged facts sufficient to support plausible claims for violations of sections 1692e and 1692f of the FDCPA. Plaintiff alleges that within one year prior to filing the complaint, plaintiff contacted defendant to indicate that he could not go forward with the December 2007 payment, and that plaintiff subsequently worked out a revised agreement with a female collector employed by defendant. (Compl. ¶¶ 27-33.) According to plaintiff, that collector stated, "No, we will not touch your account any further." (*Id.* ¶ 32.) Thereafter, according to plaintiff, the defendant attempted to negotiate checks number 296 and 297 for $154.38 and $8.75. (*Id.* ¶ 33.) The plaintiff further alleges that, without plaintiff's permission, defendant "withdrew the funds via electronic transfer on or about December 17, 2007." (*Id.* ¶ 44.) This electronic transfer, according to plaintiff, occurred also in violation of a November 2, 2007 letter and agreement between the plaintiff and defendant that plaintiff was to pay $154.38 to defendant "on or before December 23, 2007." (*Id.* ¶ 46.) Plaintiff alleges that this withdrawal violated 15 U.S.C. § 1692f(2) because defendant failed to inform plaintiff of its intent to withdraw funds from his account on December 17, 2007.

Plaintiff also alleges that, subsequent to December 16, 2007, defendant sent plaintiff a letter stating that plaintiff was in default of the payment arrangement with the defendant. The letter stated that "100.00 [dollars] was due on 12/16/2007. Specific terms of repayment were agreed upon and acknowledged. As of this date, you are in default of this payment arrangement and your immediate response is required in order to avoid additional collection efforts." (*Id.* ¶¶ 48-57.) Plaintiff

states that this was a false statement that misrepresented the agreement between the parties, in violation of 15 U.S.C. § 1692e(10). (*Id.* ¶¶ 50-57.) Plaintiff alleges that this statement also violated section 1692e(5) because it threatened to take any action that could not legally be taken or was not intended to be taken. *See* 15 U.S.C. § 1692e(5).

Plaintiff next alleges that, upon information and belief, he was charged $25.00 for a bounced check fee incurred by defendant in violation of New York General Obligation Law § 5-328, which sets the maximum fee for a check returned for insufficient funds at $20.00. Plaintiff alleges that defendant's demand for more than $20.00 for each bounced check was a false representation in violation of the FDCPA § 1692e, and was an attempt to collect an amount not permitted by law in violation of 15 U.S.C. § 1692f(1). (Compl. ¶¶ 64-67.)

### 2. Intentional Conduct

Although defendant also contends that its actions were unintentional, "[t]o recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector. The Act 'is a strict liability statute, and the degree of a defendant's culpability may only be considered in computing damages.'" *Ellis v. Solomon & Solomon*, No. 09-1247-cv, 2010 WL 104570, at *5 (2d Cir. Jan. 13, 2010) (quoting *Bentley*, 6 F.3d at 63). Accordingly, defendant may not escape liability because its conduct was unintentional. The FDCPA does, however, provide for a "bona fide error" defense, whereby "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). This defense, by its terms, requires the debt collector to demonstrate by a preponderance of the evidence that the violation was unintentional. Such a determination is a factual question that this Court is unable to resolve based on the facts before it at the motion to dismiss stage in this case. *See, e.g.*, *Bank v. Cooper*, No. 08-CV-3936 (JBW), 2009 WL 1491227, at *5 (E.D.N.Y. May 27, 2009) ("Whether the ten dollar overstatement resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error . . . is an issue of fact."); *DeGeorge v. LTD Fin. Servs., L.P.*, No. 06-CV-178S, 2008 WL 905913, at *5 (W.D.N.Y. Mar. 31, 2008) ("And because Defendant's bona fide error defense is fact-dependent and relevant only if there is a violation of the FDCPA, that too must be presented to the jury."). At this stage, the Court's role is to inquire whether, in his complaint, plaintiff has stated a plausible claim for violation of the FDCPA. The Court answers that question in the affirmative and, thus, the purported lack of intentional conduct asserted by defendant does not provide a ground for dismissal at this stage.

### 3. Conduct Occurring After Payment of Debt

Defendant also alleges that plaintiff cannot bring a claim for violation of the FDCPA because the debt at issue has already been paid. Defendant correctly notes that a "[p]laintiff cannot allege a claim for violation of the FDCPA based on conduct occurring after he paid his debt in full, even if he paid under protest." *Winter v. I.C. System, Inc.*, 543 F. Supp. 2d 1210, 1213-14 (S.D. Cal. 2008); *see also Posso v. Asta Funding Inc.*,

6

No. 07 C 4024, 2007 WL 3374400, at *3 (N.D. Ill. Nov. 9, 2007) ("When a debt is extinguished there is no debt and there can be no debt collection. Consequently, any action by a former debt-collector, however improper, could not be deemed to be 'in connection' to a present debt collection proceeding"). The Court notes that paragraph 47 of the Amended Complaint states that "The defendant's note history reflects that the $154.38 payment was made on December 17, 2007." However, the Amended Complaint does not allege that the initial $100 payment due in November 2007 was ever made.[3] Accordingly, because the December 17, 2007 payment did not satisfy all of plaintiff's outstanding debt to defendant, and because plaintiff brings claims alleging violations of the FDCPA that occurred prior to and in relation to the satisfaction of the debt, defendant's motion to dismiss the complaint on this ground is denied.

### D. Electronic Funds Transfer Act

Defendant argues that because defendant is a debt collector, not a bank, it cannot be liable under the EFTA. The EFTA is a consumer law aimed at "provid[ing] a basic framework [to] establish[ ] the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693 (emphasis added). An "electronic fund transfer" is defined as "any transfer of funds . . . which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(6). A "financial institution" under the EFTA is a bank, savings association, credit union, or any other person that directly or indirectly holds an account belonging to a consumer. *See* 15 U.S.C. § 1693a. Plaintiff's Amended Complaint does not allege that defendant is a financial institution. However, the EFTA can apply to persons and institutions other than financial institutions.

Section 1693e provides that:

> [i]n the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Board, of the amount to be transferred and the scheduled date of the transfer.

15 U.S.C. § 1693e(b). The statute's implementing regulation, known as "Regulation E," states:

> Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer.

---

[3] Moreover, even if the December 17, 2007 payment was sufficient to satisfy plaintiff's outstanding debt, plaintiff could still allege claims for (1) conduct of defendant prior to the satisfaction of the debt—that is, conduct prior to December 17, 2007; and (2) the payment of the debt itself, which plaintiff alleges was unauthorized.

7

12 C.F.R. § 205.10(b). The Official Staff Interpretations of Regulation E "expressly state that for 'authorization obtained by a third party . . . the account-holding financial institution does not violate the regulation when a third-party payee fails to obtain the authorization in writing or fails to give a copy to the consumer, rather it is the *third-party payee* that is in violation of the regulation.'" *Nordberg v. Trilegiant Corp.*, 445 F. Supp. 2d 1082, 1093-95 (N.D. Cal. 2006) (quoting Regulation E, Supp. I, Part 10(b)) (emphasis added). Accordingly, certain provisions of the EFTA may apply to debt collectors, as well as financial institutions. Plaintiff has adequately stated a cause of action against defendant for violation of the EFTA. Thus, at this stage, defendant may not escape liability under the EFTA simply because it is not a financial institution.

E. Taxation of Costs

The Court also takes this opportunity to address plaintiff's May 25, 2009 letter motion to the Court for taxation of costs for service of process on the defendant. Plaintiff alleges that he sent a waiver of summons to the defendant, but never received the waiver of summons and was forced to formally serve the defendant at a cost of $35.00. Defendant replies that in order to receive a waiver of summons, in addition to serving a copy of the summons and complaint, a plaintiff must also serve "two copies each of Forms 1A and 1B, and a stamped return envelope" on a defendant. According to defendant, plaintiff's May 25, 2009 letter motion fails to state that he complied with these requirements, and thus, plaintiff is not entitled to receive costs of service. Rule 4(d) requires that such service be accompanied by "a copy of the complaint, 2 copies of a waiver form, and a prepaid means for returning the form." Fed. R. Civ. P. 4(d)(1)(C). Pursuant to Federal Rule of Civil Procedure 4(d)(2), defendants have "a duty to avoid unnecessary costs of serving the summons by waiving service thereof where . . . they have received written notice and request comporting with the requirements of Rule 4(d)(2)." *Competitive Techs., Inc. v. Marcovitch*, No. 3:07-cv-1327, 2008 WL 140073, at *7 (D. Conn. Jan. 11, 2008) (citing Fed. R. Civ. P. 4(d)). Here, plaintiff's letter did not allege that all the requirements of Rule 4(d) were met. *See Perez v. County of Westchester*, 83 F. Supp. 2d 435, 441 (S.D.N.Y. 2000) (denying costs of service when "[a]lthough it is true that defendants refused to waive personal service on advice of counsel, plaintiff's notice and request did not comply with the requirements of Rule 4(d)"). Nor did plaintiff reply to defendant's opposition letter to inform the Court that these requirements had been met. Accordingly, plaintiff's motion for reimbursement of service costs is denied.

IV. CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is denied in its entirety. Plaintiff's motion for costs of service is also denied. Defendant is directed to file an answer within twenty days of this Memorandum and Order, and the parties are directed to proceed with discovery under the direction of Magistrate Judge Wall.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 26, 2010
       Central Islip, NY

              \* \* \*

The attorney for plaintiff is Adam J. Fishbein, 483 Chestnut Street, Cedarhurst, NY 11516. The attorney for defendant is Lawrence W. Rader, 225 Broadway, Suite 400, New York, NY 10007.