UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

№ 08-CV-5024 (JFB) (WDW)
_____

MICHAEL PUGLISI,

Plaintiff,

VERSUS

DEBT RECOVERY SOLUTIONS, LLC,

Defendant.
_____

**MEMORANDUM AND ORDER**
September 30, 2011
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Michael Puglisi ("Puglisi" or "plaintiff") brought this putative class action on behalf of himself, and on behalf of individuals similarly situated, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, by defendant Debt Recovery Solutions, LLC ("Debt Recovery Solutions" or "defendant").[1] Plaintiff and defendant have cross-moved for summary judgment. For the reasons set forth herein, plaintiff's motion is denied in its entirety and defendant's motion is granted in part and denied in part.

I. FACTS

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the parties' respective Rule 56.1 statements of facts. Upon consideration of the motions for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001). Unless otherwise noted, where a party's 56.1 statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[2]

___

[1] Plaintiff filed this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure, but no motion for Rule 23 class certification has yet been made by plaintiff at the time of the opinion.

[2] In addition, although the parties' Rule 56.1 statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 statements, rather than the underlying citation to the record, when utilizing the 56.1 statements for purposes of this summary of facts.

For purposes of this opinion, the Court assumes familiarity with the January 26, 2010 Memorandum and Order issued by this Court in the instant case which denied defendants' motion to dismiss, but held that to the extent plaintiff alleges violations of the FDCPA that occurred prior to December 12, 2007, those claims are barred by the statute of limitations. *See Puglisi v. Debt Recovery Solutions, LLC*, No. 08-CV-5024 (JFB)(WDW), 2010 WL 376628 (E.D.N.Y. January 26, 2010).

Defendant Debt Recovery Solutions is a debt collector, which has been in business for eight years and employs twelve collectors. (Def.'s 56.1 ¶ 1.) Plaintiff originally owed a debt to Verizon, which defendant Debt Recovery Solutions attempted to collect from plaintiff. (Def.'s 56.1 ¶¶ 2-4; Pl.'s Aff. ¶ 3.)

A. Collection Efforts and Communication

Defendant's representative and plaintiff communicated regarding the debt and plaintiff agreed to make two payments in full settlement of the debt. (Def.'s 56.1 ¶¶ 3-4; Pl.'s Aff. ¶¶ 4-5.) On November 2, 2007, defendant sent plaintiff a letter memorializing that agreement; under its terms, plaintiff agreed to a payment of $100.00 by November 23, 2007, and a payment of $154.38 by December 23, 2007, and that both payments would be automatically deducted from his bank account by defendant. (Def.'s 56.1 ¶¶ 5-7; Pl.'s Aff. ¶¶ 8, 10, 16-17, Pl.'s 56.1 ¶ 2.)

According to defendant's log entries for plaintiff's account ("account log")[3], defendant attempted to withdraw the initial payment of $100.00 on November 16, 2007. (Pl.'s Ex. 6 at 4.)[4] Plaintiff called defendant to complain that the payment was supposed to be due on November 23, 2007, and that his bank imposed fees for checks returned for insufficient funds.[5] (*Id.*) Defendant agreed to refund plaintiff $60.00 in bounced check fees, which defendant sent to plaintiff on December 7, 2007. (*Id.* at 5.)

Subsequent to December 16, 2007, in an undated letter, defendant wrote to plaintiff:

> Dear Michael Puglisi:
>
> Please be advised that this office has purchased the above referenced account from VERIZON.
>
> Specific terms of repayment were agreed upon and acknowledged. As of this date, you are in default of this payment arrangement and your immediate response is required in order to avoid additional collection efforts.
>
> Please remit payment immediately.

(Pl.'s Ex. 9 at 2; Def.'s Resp. to Pl.'s Reqs. for Adms., No. 14.) In addition, at the top

---

[3] Defendant provided its "note history" for plaintiff's account as part of its Initial Disclosures to plaintiff and is included in plaintiff's motion as plaintiff's Exhibit 6. The account log contains fifty entries from September 5, 2007 to January 19, 2008, detailing defendant's efforts to collect the debt and communication between plaintiff and defendant.

[4] Exhibits attached to plaintiff's motion for summary judgment are cited to as "Pl.'s Ex.

[5] As indicated *supra*, plaintiff's alleged violations of the FDCPA that occurred prior to December 12, 2007 are barred by the statute of limitations and, thus, any related facts are included for the purpose of providing a complete background.

right, the letter references plaintiff's account number, a balance due of $125.00 and "Repayment term: 100.00 was due on 12/16/2007." (*Id.*) According to plaintiff, the balance due reflects $100.00 owed by plaintiff and $25.00 bounced check fee imposed by defendant.

On December 17, 2007, defendant attempted to withdraw the next payment of $154.38 one week early. (Def.'s 56.1 ¶¶ 8, 10; Pl.'s Ex. 6 at 5.)[6] According to defendant, the attempted early withdrawal was a clerical error. (Def.'s 56.1 ¶ 10.)

### B. Discovery

Following the January 26, 2010 Memorandum and Order, discovery commenced. In response to plaintiff's requests for admissions, Donald Schwartz, President of defendant Debt Recovery Solutions ("Schwartz" or defendant's "president"), was inconsistent with regard to whether defendant attempted to impose bounced check fees on plaintiff. Specifically, Schwartz stated:

> 12. The defendant attempted to impose two $25.00 fees for representing [sic] bounced check fees.

> Denied. Defendant did not impose the fees; defendant was charged the fees by its bank.

> 14. In the said undated letter, the $125.00 reflected $100 still owing on the account and a $25.00 bounced check fee.

> Admitted. But do not recall if it was $25 or $30.

(Pl.'s Ex. 7 at 2-3, Ex. 8 at 1-2.)

In response to plaintiff's interrogatories, which asked for the names of each "collection representative who spoke with the plaintiff and on what date," defendant submitted:

| Name | Date |
|---|---|
| Leo Garzon | Oct. 30, 2007 |
| Kimberly David | Nov. 1, 2007 |
| Leshawn Lukes | Nov. 26, 2007 |
| Theresa Brown | Nov. 26, 2007 |
| Maxine Fletcher | Dec. 5, 2007 |
| Ellen Scurry | Dec. 6, 2007 |
| Walter [last name unknown] | Dec. 26, 2007 [] |
| | Jan. 9, 2008 |
| Nadia Walters | Dec. 29, 2007 |

(Pl.'s Ex. 7 at 3, Ex. 8 at 2.)

### C. Declaration of Defendant's President

By declaration dated December 20, 2010, defendant's president set forth defendant's policies and procedures "intended to prevent any errors or inadvertent violation of the FDCPA and EFTA" to demonstrate defendant's basis for a bona fide error defense. (Donald Schwartz Declaration In

---

[6] It is undisputed that it was agreed between plaintiff and defendant that the funds would be "automatically" withdrawn from his account. (Def.'s 56.1 ¶ 7; Pl.'s Aff. ¶ 10.) However, as discussed *infra*, it is disputed whether the attempted withdrawal was a "preauthorized electronic funds transfer" which is "an electronic fund transfer authorized in advance to recur at substantially regular intervals," under 15 U.S.C. § 1693a(9).

3

Opp. of Pl.'s Mot. and In Support of Def.'s Cross-Mot. ("Schwartz Decl.") ¶¶ 1-2.)[7]

Schwartz declared that, after being hired, all new employees are given written procedures in the form of defendant's Company Manual and its Training Manual. (Schwartz Decl. ¶ 4.) The employees then receive "one-on-one" classroom training by a supervisor, followed by mentoring by defendant's "longest tenured and most knowledgeable senior collectors." (*Id.* ¶¶ 4-5.) In addition, a new employee typically has to undergo two to three weeks of training before taking "live calls" and "[w]e have a series of three examinations that are given to all new employees. All collectors must pass at least one exam before they are allowed to commence any collection activity." (*Id.* ¶ 5.) Schwartz further declared that:

> As part of our membership with our trade association, our management is invited to and regularly attends various seminars and training programs. Additionally, our trade association keeps us apprised of any new laws that affect our industry in all states throughout the country. We provide additional training as these laws are passed.

(Schwartz Decl. ¶ 6.)

In addition, all written communication to customers are reviewed by management and "company policy currently dictates that prior to the commencement of any collection activity a letter is mailed to the debtor detailing the amount of the debt and the name of the original creditor." (*Id.* ¶¶ 7-8.) Schwartz also declared that "[p]ost-dated payments are actively solicited by our staff, and once received they are calendared both manually and electronically prior to deposit." (*Id.* ¶ 9.) In addition, Schwartz personally investigated the error, and despite the "extraordinary measures" to avoid any such occurrence, the inadvertent posting of the check was "an error by a data entry clerk, who had keyed in the wrong date." (*Id.*) Finally, Schwartz discussed the error with the clerk and cautioned him to be more careful and comply with the training provided by defendant to prevent such error. (*Id.* ¶ 9 ("There have been no such incidents since.").)

Plaintiff never deposed Schwartz or any of the collection representatives who communicated with plaintiff.

---

[7] The Court notes that, in its January 26, 2010 Memorandum and Order denying defendant's motion to dismiss, the Court stated that:

> The FDCPA does, however, provide for a 'bona fide error' defense, whereby '[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bonafide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.' 15 U.S.C. § 1692k(c). This defense, by its terms, requires the debt collector to demonstrate by a preponderance of the evidence that the violation was unintentional. Such a determination is a factual question that this Court is unable to resolve based on the facts before it at the motion to dismiss stage in this case. At this stage, the Court's role is to inquire whether, in his complaint, plaintiff has stated a plausible claim for violation of the FDCPA.

*Puglisi*, 2010 WL 376628, at *5 (citations omitted).

4

B. Procedural History

Plaintiff filed the complaint in this action on December 12, 2008. On October 15, 2009, plaintiff filed an amended complaint. On November 23, 2009, defendant moved to dismiss the amended complaint. By Memorandum and Order dated January 26, 2010, the Court denied defendant's motion in its entirety. Defendant answered on April 29, 2010. On November 19, 2010, plaintiff submitted his motion for summary judgment. Defendant cross-moved for summary judgment on December 20, 2010.[8] Plaintiff submitted his reply to defendant's opposition to plaintiff's motion for summary judgment and opposition to defendant's motion for summary judgment on January 10, 2011. On March 2, 2011, defendant submitted its reply to plaintiff's opposition to defendant's cross-motion for summary judgment. The Court held oral argument on March 25, 2011. On March 28, 2011, counsel for plaintiff filed a letter requesting leave to address an issue raised at oral argument. In an abundance of caution, the Court granted plaintiff's request. Plaintiff filed his post-argument letter on July 18, 2011 and defendant responded on July 31, 2011. This matter is fully submitted and the Court has fully considered the submissions of the parties.

---

[8] By letters dated February 18, 2011, the parties disputed whether defendant's cross-motion for summary judgment was properly before the Court. By Order dated February 18, 2011, the Court advised the parties that both plaintiff's motion for summary judgment and defendant's cross-motion will be before the Court at oral argument. In addition, the Court granted leave to defendant to submit a reply to plaintiff's opposition to defendant's cross-motion for summary judgment by March 2, 2011.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). "The moving party bears the burden of showing that he or she is entitled to summary judgment." *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). The Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . The nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary

5

judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment." *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

### III. DISCUSSION

Plaintiff contends that defendant violated the FDCPA in five ways. First, plaintiff argues that defendant violated sections 1692f(2) and 1692f(4) (collectively, the "FDCPA early withdrawal claims"), by attempting to deposit plaintiff's postdated payment prior to the agreed upon date and by failing to give advance notice, within the statutory time frame, to plaintiff of its intent to deposit the payment. (*See* Pl.'s Mem. of Law at 11, 14-15.) Second, plaintiff contends that defendant violated sections 1692e(5), 1692e(10) and 1692f(1) (collectively, the "FDCPA bounced check fee claims") based on the undated letter which includes a $25.00 bounced check fee added to the amount owed by plaintiff, and, thus, the letter constitutes a false representation and a threat to take illegal action (*see* Pl.'s Mem. of Law at 9, 12) because the maximum allowed for a bounced check under New York General Obligations Law § 5-328 is $20.00. Plaintiff also contends that defendant violated the EFTA, section 1693e(b), by failing to give advanced written notice for plaintiff's preauthorized electronic fund transfer. (*See* Pl.'s Mem. of Law at 16-18.)

For the reasons set forth below, plaintiff's motion for summary judgment is denied in its entirety and defendant's cross-motion is granted in part and denied in part. Specifically, with respect to the FDCPA early withdrawal claims, the Court concludes that because the undisputed evidence demonstrates that defendant is entitled the bona fide error defense, defendant's cross-motion for summary judgment is granted on these claims. With respect to the FDCPA bounced check fee claims, the cross-motions for summary judgment are denied because the Court concludes that disputed issues of material fact exist as to whether defendant attempted to collect bounced check fees from plaintiff, thereby precluding the Court from granting summary judgment in favor or either party. Finally, with respect to the EFTA claim, the Court concludes that the undisputed evidence demonstrates that the withdrawal of funds did not meet the statutory definition of a "preauthorized electronic fund transfer" under 15 U.S.C. § 1693a(9) and, thus, defendant was not statutorily obligated to provide plaintiff with advance written notice of the withdrawal of funds. Accordingly, defendant's cross-motion for summary judgment is granted on the EFTA claim.

### A. Fair Debt Collection Practices Act

The FDCPA was created to respond to the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Finding that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," the Act aims "to

6

eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(a),(e).

15 U.S.C. § 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Specifically, 15 U.S.C. § 1692e(5) prohibits a debt collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). 15 U.S.C. § 1692e(10) forbids the use of "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." To determine whether a practice falls within this description, courts apply an objective test based on the understanding of the "least sophisticated consumer." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993). "Deceptiveness within the meaning of this subsection includes ambiguity; a collection notice may be deceptive when it can reasonably be read to have two or more different meanings, one of which is inaccurate." *Barrientos v. Law Offices of Mark L. Nichter*, 76 F. Supp. 2d 510, 513 (S.D.N.Y. 1999) (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)). "The fact that a notice's terminology was vague or uncertain will not prevent it from being held deceptive under § 1692e(10)." *Id.*

A separate section of the FDCPA, 15 U.S.C. § 1692f, provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Specifically, 15 U.S.C. § 1692f(2) prohibits a debt collector from accepting "a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit." 15 U.S.C. § 1692f(2). 15 U.S.C. § 1692f(4) forbids a debt collector from "[d]epositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument."

The FDCPA also provides for a "bona fide error" defense, whereby "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). This defense, by its terms, requires defendant to demonstrate by a preponderance of the evidence both: (1) that the violation was unintentional; and 2) that it resulted from a bona fide error notwithstanding procedures reasonably adapted to avoid any such error. *See Pipiles v. Credit Bureau of Lockport*, 886 F.2d 22, 25 (2d Cir. 1989). Such a determination is a factual question. *See, e.g.*, *Bank v. Cooper*, No. 08-CV-3936 (JBW), 2009 WL 1491227, at *5 (E.D.N.Y. May 27, 2009) ("Whether the ten dollar overstatement resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error . . . is an issue of fact."); *see also DeGeorge v. LTD Fin. Servs., L.P.*, No. 06-CV-178S, 2008 WL 905913, at *5 (W.D.N.Y. Mar. 31, 2008). In addition, a debt collector cannot escape liability under the bona fide error defense due to mistake of law, that is, a violation of FDCPA resulting from a debt collector's incorrect interpretation of the legal

7

requirements of the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* – – – U.S. – – – –, 130 S.Ct. 1605, 1611-16 (2010). Finally, when attempting to show that he is entitled to the bona fide error defense, a debt collector "need not demonstrate that its procedures for avoiding [FDCPA] violations are 'fool proof,' but rather, must only show that its procedures constitute a 'reasonable precaution.'" *Katz v. Asset Acceptance, LLC,* Civil Action No. CV-05-2783 (DGT), 2006 WL 3483921, at *2 (E.D.N.Y. Nov. 30 2006) (citing *Kort v. Diversified Collection Serv. Inc.,* 394 F.3d 530, 539 (7th Cir.2005)); *see also Hyman v. Tate,* 362 F.3d 965, 968 (7th Cir. 2004) (affirming the district court's finding that the debt collector's procedures were reasonable, despite the fact that they left open some room for error).

1. The FDCPA Early Withdrawal Claims

As noted above, plaintiff alleges a violation of sections 1692f(2) and 1692f(4) of the FDCPA. Defendant does not dispute that it violated sections 1692f(2) and 1692f(4) by submitting plaintiff's postdated December 23, 2007 payment earlier than agreed upon. Specifically, there is no dispute that defendant submitted plaintiff's postdated payment on December 17, 2007 instead of December 23, 2007, and did so without notification to plaintiff. However, defendant asserts that it is entitled to the statutory affirmative defense of bona fide error provided for in the FDCPA because defendant committed the violations inadvertently and "despite the existence of defendant's procedures designed to avoid such errors." (Def.'s Mem. of Law at 2; *see id*. at 3-5; *see also* Schwartz Decl. ¶ 9 ("Mr. Puglisi's check had inadvertently been presented before the agreed-upon date")).[9]

Plaintiff argues that defendant is not entitled to the bona fide error defense because the error at issue is a mistake of law. Specifically, plaintiff argues that "New York's bounced check statute . . . is clear that the maximum that can be charged to a customer is $20.00. . . . Defendant apparently has misinterpreted the statute which is a mistake of law." (Pl.'s Mem. of Law at 14; *see id*. 12-14; *see also* Pl.'s Reply at 5 ("The issues herein are the amount of the fee which

---

[9] As an initial matter, plaintiff argues that defendant may not rely on the bona fide error defense because defendant failed to raise the bona fide error defense in its Answer and first raised the defense in its cross-motion for summary judgment. Although the defendant did not plead the affirmative defense of bona fide error in its answer, the Court finds that plaintiff would not be prejudiced by permitting defendant to assert the bona fide error defense. Plaintiff responded to defendant's bona fide error defense claims after raising his objections to use of the defense. In addition, plaintiff has had ample opportunity to file affidavits or other evidence to rebut defendant's use of the defense. In fact, as noted *supra*, the plaintiff has been on notice about the defense since the Court's January 26, 2010 Memorandum and Order, which explicitly referenced the bona fide error defense as a factual question yet to be determined. *See Puglisi*, 2010 WL 376628, at *5. In sum, plaintiff cannot claim surprise or prejudice by the defendant's use of this defense. Thus, for the reasons set forth above, the Court, in its discretion, will allow defendant to assert a bona fide error defense. *See Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 27 (2d Cir.1989) ("We note that the Bureau did not plead a section 1692k(c) defense in its answer, or argue it on appeal. Upon remand, the district court should determine in its discretion whether to allow the Bureau to tender a section 1692k(c) defense.")

8

is an issue of law and the threatening to collect that fee.").) Plaintiff appears to be confusing his respective claims and defendant's arguments. With respect to the FDCPA early withdrawal claims, plaintiff argues that defendant violated the FDCPA by attempting to deposit plaintiff's postdated payment prior to the agreed upon date and by failing to give advance notice to plaintiff. In other words, the existence or amount of a bounced check fee is irrelevant with regard to these claims. Accordingly, defendant does not argue that it is entitled to the bona fide error defense because it misinterpreted New York's dishonored check statute;[10] rather, defendant argues that it is entitled to the bona fide error defense because an employee made a clerical error that resulted in the early attempted withdrawal on December 17, 2007 and the lack of notice to plaintiff. Thus, with respect to the FDCPA early withdrawal claims, the Court agrees with defendant that the issue with defendant's bona fide error defense is a factual one—namely, whether defendant's early attempted withdrawal of plaintiff's funds and lack of notice resulted from a bona fide error notwithstanding the existence of procedures reasonably adapted to avoid any such error. *See DeGeorge*, 2008 WL 905913, at *5; *see also Bank*, 2009 WL 1491227, at *5 (it is an issue of fact "[w]hether the ten dollar overstatement resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."). Therefore, the Court concludes that defendant is asserting a mistake of fact and, thus, is not precluded from asserting the bona fide error defense with respect to the FDCPA early withdrawal claims.[11]

As discussed above, to establish the bona fide error defense, defendant must demonstrate by a preponderance of the evidence that its FDCPA violation was unintentional and that it resulted from a bona fide error despite the use of procedures reasonably adapted to avoid any such error. *See* 15 U.S.C. § 1692k(c).

In support of its argument for bona fide error, as noted *supra*, defendant asserts that the error was an inadvertent clerical error, it was unintentional and occurred notwithstanding the existence of procedures and training to prevent such errors, including written procedures in the form of a Company Manual and a Training Manual, specific classroom training for compliance with the FDCPA and State law issues, employee examinations, review of communications, mentoring by the senior-most collectors, and various seminars and training programs as part of defendant's membership in its trade association. (*See* Schwartz Decl. ¶¶ 4-7.)

In responding to this argument, plaintiff has failed to adduce any evidence rebutting the declaration of defendant's president, which demonstrates that defendant maintains extensive training, mentoring and oversight. Specifically, plaintiff did not depose defendant's president or any of the collection representatives that defendant provided in

---

[10] As discussed *infra*, with respect to the FDCPA bounced check fee claims, defendant clearly disputes that it ever charged or attempted to collect the alleged $25.00 bounced check fee. (*See* Def.'s 56.1 ¶ 9 ("[P]laintiff was charged $25.00 by his bank."); *see* Def.'s Reply at 2 ("Defendant did not charge plaintiff the $25.00 fee or collect it from him; his bank did.").)

[11] To the extent that plaintiff argues that defendant is not entitled to the bona fide error defense because defendant's conduct is intentional, plaintiff's argument is without merit. As discussed *infra*, defendant has submitted the unrebutted declaration from its president stating that the error was an unintentional clerical error.

9

response to plaintiff's interrogatories.[12] In addition, plaintiff offered no affidavits or other evidence disputing defendant's evidence of bona fide error and the existence of training and procedures to avoid such errors. Thus, because defendant's evidence is unrebutted, the Court concludes that a rational jury could only find that the FDCPA early withdrawal claims were caused by a bona fide error of a clerical nature. Thus, the remaining question is whether defendant demonstrated that it employed procedures "reasonably adapted to avoid" the error that occurred. 15 U.S.C. § 1692k(c). Here, defendant's unrebutted evidence clearly establishes that employees receive written procedures in the form of a training manual, specific training regarding FDCPA compliance and State law issues as well as "one-on-one" classroom training with a supervisor and then mentoring from defendant's senior-most collectors. Moreover, the employees receive additional training after defendant is notified of changes to the law by its trade association and employees must pass an exam before commencing collection activity. Thus, even after drawing all reasonable inferences in favor of plaintiff, the Court concludes that a rational jury could only conclude that defendant's procedures constitute a "reasonable precaution" to prevent the clerical error which resulted in defendant's attempted early withdrawal of plaintiff's funds and lack of notice. *Katz*, 2006 WL 3483921, at *2 (defendant's procedures need not be "fool proof"); *see also Hyman,* 362 F.3d at 968 (finding that the debt collector's procedures were reasonable, despite the fact that they left open some room for error); *see, e.g.*, *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 421 (8th Cir. 2008) (elaborate procedures are not required where the issue is not complex). Furthermore, Courts have granted summary judgment based on the bona fide error defense when defendants have come forward with evidence similar to that adduced by defendant and where plaintiff has made no effort to refute that evidence. *See id.* (granting defendant summary judgment on bona fide error defense and finding it "highly relevant that [plaintiff] made no attempt to dispute the facts set forth in affidavits by [defendant's] highest-ranking official" setting forth the procedures it employed to avoid errors); *Howe v. Reader's Digest Ass'n, Inc.*, 686 F. Supp. 461, 467 (S.D.N.Y. 1988) (granting summary judgment granted in favor of bona fide error defense where plaintiff "failed to adduce any evidence refuting the [defendants'] affidavits . . . which demonstrate that [defendants] maintain extensive systems and procedures designed to [avoid errors]"); *Katz*, 2006 WL 3483921, at *3 (granting summary judgment where plaintiff failed to rebut defendant's affidavits concerning firm policies and procedures that defendant has in place to avoid errors with anything but conclusory allegations defendant's actions were intentional); *Bank*, 2009 WL 1491227, at *5 (granting summary judgment where plaintiff declined to take sworn testimony of defendant's supervising employee and offered no other admissible evidence); *see also Beattie v. D.M. Collections, Inc.,* 754 F. Supp. 383, 389 (D. Del. 1991) (granting summary judgment under bona fide error defense where employees periodically attended periodic seminars in FDCPA compliance and employer provided training on FDCPA requirements, gave employees various editions of FDCPA manuals, issued a memorandum delineating its FDCPA policy and posted card dictating the verbiage employees were required to use when contacting debtors by telephone); *accord Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1031 (6th Cir. 1992) (finding that

---

[12] Defendant provided the names of each collection representative and the date that each communicated with plaintiff. See *supra* Section I.B.

a collection letter mailed shortly after receiving the consumer's cease and desist communication letter constituted a *bona fide* error because the defendant debt collector introduced an employee's procedural manual and two employee affidavits, which showed that the error was at most a clerical error); *cf. Dimovski v. Tolisano & Danforth, L.L.C.*, No. 3:10-CV-205 (JCH), 2011 WL 1638051, at *5 (D. Conn. April 29, 2011) (defendant's motion for summary judgment under the bona fide error defense denied, based in part on plaintiff's deposition of the debt collection law firm regarding its standard procedures for avoiding error); *Silver v. Law Offices of Howard Lee Schiff, P.C.*, Civil No. 3:09CV912 (PCD), 2010 WL 3000053, at *5 (D. Conn. July 28, 2010) (same). Accordingly, defendant's cross-motion is granted with respect to the FDCPA early withdrawal claims.

## 2. The FDCPA Bounced Check Fee Claims[13]

Plaintiff contends that defendant violated sections 1692e(5), 1692e(10) and 1692f(1) based on the undated letter containing a $25.00 bounced check fee added to the amount owed by plaintiff, which plaintiff asserts constitutes a false representation and a threat to take illegal action because the maximum allowed for a bounced check under New York General Obligations Law § 5-328 is $20.00. In other words, the FDCPA bounced check fee claims are all predicated on whether the defendant attempted to collect a bounced check fee from plaintiff, which is $5.00 more than the maximum allowable under State law. (*See* Pl.'s Mem. of Law at 12 ("The defendant could lawfully engage in additional collection efforts only to collect, at best the amount of $120.00. Therefore, the defendant is in violation of 1692e(10) and 1692e(5)."); *id*. at 9 ("[D]efendant unlawfully attempted to charge the plaintiff $25.00 for an insufficient funds fee when the maximum amount in New York State is only $20.00.")) For the reasons set forth below, the cross-motions for summary judgment are denied because the Court concludes that disputed issues of material fact exist as to whether defendant attempted to collect bounced check fees from plaintiff, thereby precluding the Court from granting summary judgment in favor or either party.

Plaintiff relies on three pieces of evidence in support of his motion for summary judgment on these claims. First, it is undisputed that, in an undated letter, defendant wrote to plaintiff that he was in "in default" of a $100.00 payment which was due on December 16, 2007, and although the repayment term was listed as $100.00, the balance due reflected $125.00. (Pl.'s Ex. 9 at 2; Def.'s Resp. to Pl.'s Reqs. for Adms., No. 14.) Second, in response to plaintiff's request for admissions, defendant's president admitted that the undated letter reflected a $25.00 bounced check fee. Specifically, Schwartz stated:

> 14. In the said undated letter, the $125.00 reflected $100 still owing on the account and a $25.00 bounced check fee.

---

[13] As an initial matter, defendant claims that it never attempted to impose or collect a bounced check fee. (*See* Def.'s 56.1 ¶ 9 ("[P]laintiff was charged $25.00 by his bank."); *see* Def.'s Reply at 2 ("Defendant did not charge plaintiff the $25.00 fee or collect it from him; his bank did.").) In other words, defendant claims that it committed no error with respect to the FDCPA bounced check fee claims. Therefore, the bona fide error defense, by its terms, is not at issue with respect to these claims. *See* 15 U.S.C. § 1692k(c); *see also DeGeorge*, 2008 WL 905913, at *5 ("Defendant's bona fide error defense is fact-dependent and relevant only if there is a violation of the FDCPA.").

11

>Admitted. But do not recall if it was $25 or $30.

(Pl.'s Ex. 7 at 3, Ex. 8 at 2.)

Third, plaintiff points to the account log provided by defendant,[14] which shows a "Total Due" of 150.00 at the top of each page. (Pl.'s Ex. 6 at 4.)

In papers and at oral argument, defendant argued that it never attempted to impose any bounced check fee and plaintiff's evidence is insufficient to show otherwise.[15] Specifically, with respect to the evidence of defendant's admission, defendant contends that Schwartz was referring to the bounced check fees imposed by plaintiff's bank, rather than defendant, and points to Schwartz's response in a prior request which he denied that "[d]efendant attempted to impose" bounced check fees. (Def.'s Resp. to Pl.'s Reqs. for Adms., No. 12 ("Denied. Defendant did not impose the fees; defendant was charged the fees by its bank.").) With respect to the evidence of the undated letter and account log reflecting balances over what plaintiff owed, defendant counters that the undated letter and account log explicitly refer to the repayment term and amount owed as $100 and make no mention of any bounced check fee.

In short, based on the evidence presented to this Court, it is not clear whether defendant attempted to collect a bounced check fee from plaintiff. On the one hand, if plaintiff's evidence is credited—namely, the undated letter stating a balance due of $125.00 together with defendant's admission that the balance due reflected the $100.00 that defendant owed plus a $25.00 bounced check fee, along with the account logs, which show a total due of $150.00—and all reasonable inferences are drawn in plaintiff's favor, a rational trier of fact could conclude that defendant attempted to collect a bounced check fee. On the other hand, if defendant's evidence is credited—namely, the statement by Schwartz that denied imposing any bounced check fees and that Schwartz was referring to the bounced check fees imposed by plaintiff's bank on plaintiff in his other admission, along with the fact that the entries in the account log and undated letter make no mention of any bounced check fee, but both explicitly refer to a repayment term and amount owed as $100—and all reasonable inferences are drawn in favor of defendant, a rational trier of fact could reach the opposite conclusion. Accordingly, the Court is unable to grant summary judgment in favor of either party.

## B. The EFTA Claim

Plaintiff and defendant have cross-moved for summary judgment with regard to plaintiff's claim that defendant violated the EFTA, section 1693e(b), by failing to give advanced written notice to plaintiff for the preauthorized electronic fund transfer. (*See* Pl.'s Mem. of Law at 15-17.) For the reasons set forth below, plaintiff's EFTA claim cannot survive summary judgment.

The EFTA is a consumer law aimed at "provid[ing] a basic framework [to] establish[] the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693 (emphasis added). An "electronic fund transfer" is defined as "any transfer of funds other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or

---

[14] *See supra*, footnote 3.

[15] *See supra*, footnote 10, 13.

12

credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone." 15 U.S.C. § 1693a(6). A "preauthorized electronic fund transfer" is defined as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(9).

> Section 1693e provides that:
>
> [i]n the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, the financial institution or designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with regulations of the Board, of the amount to be transferred and the scheduled date of the transfer.

15 U.S.C. § 1693e(b). The statute's implementing regulation, known as "Regulation E," states:

> Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer.

12 C.F.R. § 205.10(b).

As a threshold issue, it is clear from defendant's papers that defendant is disputing whether its attempted withdrawal of plaintiff's funds on December 17, 2007 was a "preauthorized electronic funds transfer" which is "an electronic fund transfer authorized in advance *to recur at substantially regular intervals*," under U.S.C. § 1693a(9) (emphasis added). (*See, e.g.,* Def.'s 56.1 ¶ 4 ("Plaintiff . . . agreed to make two payments in full settlement of the debt."); ¶ 6 (the letter agreement between defendant and plaintiff, dated November 2, 2007, confirmed that plaintiff agreed to make two payments, one for $100.0 and the other for $154.38); Def.'s Mem. of Law at 1 ("Defendant mistakenly made one of the [two] authorized withdrawals before the date to which it agreed.").) In other words, the undisputed evidence demonstrates that there were no recurring automatic payments and, thus, defendant was not statutorily obligated to provide notice to plaintiff. The Court agrees.

It is undisputed that plaintiff agreed to make two payments in full settlement of his debt and he authorized defendant to make only two withdrawals. (*See* Def.'s 56.1 ¶¶ 5-7; Pl.'s Aff. ¶¶ 8, 10, 16-17, Pl.'s 56.1 ¶ 2.) In short, there is no evidence that plaintiff's authorization was designed to allow for deductions at substantially regular intervals. *See Okocha v. HSBC Bank USA, N.A.*, No. 08 Civ. 8650(MHP)., 2010 WL 5122614, at *2 (S.D.N.Y. Dec. 14, 2010) ("Although the deposit account agreement authorizes defendants to use funds in the deposit account to pay off debts owed to HSBC, such authorization is not designed 'to recur at substantially regular intervals' [pursuant to 15 U.S.C. § 1693a(9)]. HSBC may have debited plaintiff's account on several occasions to offset the balance on his overdraft account, but plaintiff has provided no evidence that these offsets occurred, for example, at weekly, monthly, or annual intervals."); *see also In re DirecTV Early Cancellation Litigation*, 738 F. Supp. 2d 1062, 1091 (C.D. Cal. 2010) ("The authorization DirecTV obtains for a one-time charge of the Cancellation Fee does not fit within [the] definition [of 15 U.S.C. § 1693a(9)]. . . .[T]here are no allegations of

13

recurring automatic payments in violation of EFTA.") In sum, after drawing all reasonable inferences in favor of plaintiff, the Court concludes that a rational jury could only conclude that there was no preauthorized electronic funds transfer. Accordingly, plaintiff's EFTA claim cannot survive summary judgment.[16]

C. Motion for Attorney's Fees and Costs

The defendant seeks costs, disbursements, and attorney's fees on the ground that the action was brought in bad faith and for the purpose of harassment. *See* 15 U.S.C. § 1692k(a)(3) (if the court finds that an action under the FDCPA "was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."). "Defendant must provide evidence of plaintiff's bad faith (as opposed to counsel's bad faith)." *Hasbrouck v. Arrow Financial Services LLC*, No. 1:09–CV–748 (MAD/RFT), 2011 WL 1899250, at *7 (N.D.N.Y. May 19, 2011) (citing *Kahen–Kashani v. Nat'l Action Fin. Servs., Inc.*, No. 03CV828, 2004 WL 1040384, at *7

---

[16] The Court also notes that it appears that plaintiff's EFTA claim cannot meet the definition of an "electronic fund transfer" under 15 U.S.C. § 1693a(6). As noted above, an "electronic fund transfer" is defined as "any transfer of funds *other than a transaction originated by check, draft, or similar paper instrument*, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(6) (emphasis added). Plaintiff's entire argument that defendant violated the FDCPA is predicated on evidence that plaintiff's postdated *check* was deposited early and plaintiff was charged $25.00 for a *bounced check* fee incurred by defendant in violation of New York General Obligation Law § 5-328, which sets the maximum fee for a *check* returned for insufficient funds at $20.00. (*See* Pl.'s Mem. of Law at 10 ("The defendant attempted to charge $25.00 for the fact that the plaintiff bounced a check."); *id*. at 12 ("[B]ounced check charge unlawfully imposed by defendant."); *id*. at 13 ("[T]he check bounced."); *id*. at 14 ("[D]efendant . . . attempted to seek the fee which its bank charged for the fact that plaintiff's check had bounced."); *see also* Pl.'s Aff. ¶ 35 ("[T]he $125.00 balance due reflects the $100.00 remaining amount plus a charge for a bounced check fee incurred by defendant."); ¶ 37 ("Defendant engaged in false representation by demanding more than the legal amount of $20.00 for each bounced check.").) In short, plaintiff's arguments and evidence concerning the alleged FDCPA violations clearly contradict plaintiff's argument that defendant violated the EFTA by originating a transfer of funds "other than a transaction originated by check, draft, or similar paper instrument," under 15 U.S.C. § 1693a(6).

Plaintiff appears to be relying on a distinction between providing a physical check versus providing check numbers. (*See* Pl.'s Aff. ¶¶ 6, 13 (sent check numbers but not physical checks).) First, plaintiff has not provided any authority or argument concerning this distinction and how it applies to the statutory definition of an "electronic fund transfer" under 15 U.S.C. § 1693a(6). Second, the evidence submitted clearly establishes the involvement of a postdated check. For example, plaintiff provided his bank statement, dated December 31, 2007, to demonstrate that defendant attempted to withdraw the $154.38 payment one week early. However, within that bank statement, the early withdrawal at issue is reflected as check number 296 on December 18, 2007 within the transactions section of the statement as well as in the "Checks in Order" section. (*See* Pl.'s Ex. 10 at 2 ("CK# 296" presented on December 18, 2007); *id*. at 3 (check number 296 in the amount of 154.38).) In addition, the unrebutted evidence of defendant's president states that "Mr. Puglisi's check had inadvertently been presented before the agreed-upon date." (Schwartz Decl. ¶ 9.) In sum, plaintiff's own arguments and evidence belie plaintiff's claim that defendant violated the EFTA.

(W.D.N.Y. April 12, 2004); *see also Spira v. Ashwood Financial, Inc.*, 358 F. Supp. 2d 150, 161 (E.D.N.Y. 2005). Here, defendant provides no evidence of plaintiff's bad faith and that the suit was instituted for the purpose of harassment.[17] In any event, "even if this Court wished to attribute counsel's conduct to the client, defendant has not proved the second element, that the suit was instituted for the purpose of harassment." *Kahen-Kashani,* 2004 WL 1040384, at *7. In other words, there is no indication whatsoever that plaintiff brought these charges in bad faith and for the purpose of harassment. In fact, plaintiff sufficiently plead causes of action under the FDCPA and EFTA to survive defendant's motion to dismiss (*see Puglisi*, 2010 WL 376628) and, as noted above, the FDCPA bounced check fee claims have survived summary judgment. Accordingly, the court finds that no costs, disbursements or attorney's fees should be awarded.

IV. CONCLUSION

For the reasons set forth above, plaintiff's motion for summary judgment is denied in its entirety, and defendant's cross-motion is granted in part and denied in part. Specifically, with respect to plaintiff's FDCPA early withdrawal claims, the Court concludes that, because the undisputed evidence demonstrates that defendant is entitled the bona fide error defense, defendant's cross-motion for summary judgment is granted. With respect to plaintiff's FDCPA bounced check fee claims, the cross-motions for summary judgment are denied because the Court concludes that disputed issues of material fact exist as to whether defendant attempted to collect bounced check fees that are in excess of the maximum allowed under State law. With respect to plaintiff's EFTA claim, the Court concludes that the undisputed evidence demonstrates that there was no "preauthorized electronic funds transfer" and, thus, defendant was not statutorily obligated to provide plaintiff with notice of the withdrawal of funds. Accordingly, defendant's cross-motion for summary judgment is granted on the EFTA claim. Finally, defendant's motion for costs, disbursements and attorney's fees is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 30, 2011
      Central Islip, NY

\* \* \*

The attorney for plaintiff is Adam J. Fishbein, 483 Chestnut Street, Cedarhurst, NY 11516. The attorney for defendant is Lawrence W. Rader, 225 Broadway, Suite 400, New York, NY 10007.

---

[17] Defendant merely argues that plaintiff's claims are baseless and that the action was instituted to "extract[] a settlement." (Def.'s Mem. of Law at 7.)