UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------
MICHAEL PUGLISI

                        Plaintiff,                    08 CV 5024 (JFB)

      -against-

DEBT RECOVERY SOLUTIONS, LLC

                        Defendant.
----------------------------------------------------------

## ADAM J. FISHBEIN'S AFFIRMATION

I declare under penalties of perjury the following.

1.     I am plaintiff's counsel.

2.     This affirmation is presented to the Court in conjunction with plaintiff's opposition to defendant's motion for fees and costs.

2.     I have been bringing suits under the Fair Debt Collection Practices Act for about sixteen years.

3.     I have filed many FDCPA suits during that time period.

4.     I have had numerous decisions from Courts in the Eastern District of New York and some from the Southern District of New York.

5.     In the past, I worked along with some class action firms from Chicago, Illinois who have established reputations in consumer class action litigation.

6.     I have also been approved as class counsel on my own as well.

7.      Many matters that I have filed have involved technical violations of the FDCPA where there is no claim for actual damages.

8.      I have prevailed upon many summary judgment motions that have been brought over the years.

9.      I believe that I familiarized various Judges and Magistrates within the Eastern District of New York concerning various issues.

10.     While not every judge has agreed with me, and Mr. Rader has cited to a few instances, there are certain decisions, in which I prevailed, which have been quoted by other federal courts all over the country.

11.     What struck me about this case in particular is I was presented with a young man who did not have a plethora of various debt collection letters.

12.     The attorney who referred the matter to me, Concetta Puglisi, grew up in a home where her parents took in foster children into their home.

13.     Michael Puglisi was one of those children.

14.     He is perhaps your average consumer, probably somewhat on a higher level than the least sophisticated consumer, but by no means sophisticated.

15.     "Attempting to do the right thing," in good faith he negotiated a payment plan with the defendant.

16.     The amended complaint sets forth in a detailed fashion the history of the problems my client had in trying to deal in good faith with the defendant.

17.    Regardless of whether the defendant prevailed upon the bona fide error defense, my client tried to the best of his financial ability to resolve the matter.

18.    At one point in time, the Court believed that Michael had paid the debt in full which called into question as to whether there was a debt at issue, but we clarified that a check was returned for insufficient funds.

19.    It is axiomatic that my client's intent was there to resolve the outstanding obligation.

20.    It is also axiomatic that the defendant's collectors did not deal with my client the way they should have.

21.    Again, the defendant was found to be not liable; however, absent the bona fide error defense, the defendant certainly acted in a fashion towards my client which is in violation of the FDCPA.

22.    The primary reason for my client's having brought the matter was because he was upset that he tried in good faith to pay the debt; he explained that he could not go through with the payment as he lost his job.

23.    Despite the losing of his job and his explaining the situation in good faith, the defendant still went ahead and tried to extract funds from Michael's checking account.

24.    As was pointed out to the Court, the account history documents that my client was upset in the way the account was being handled.

25. In this particular matter, Michael felt he was wronged and was damaged undergoing emotional distress and some financial loss.

26. When my client lost on the motion for summary judgment, he was very disappointed and felt that the defendant wiggled out of a strong claim because they had some time of "training."

27. However, there was the one claim remaining which could subject the defendant to statutory damages.

28. I strongly disagree with some of Mr. Rader's representations.

29. He indicates in his declaration that the matter was brought over a dispute of $25.00.

30. That is certainly not the case.

31. The case was brought over the way my client tried to pay his debt in a a good faith fashion but was harassed and deceived in the process.

32. There was no personal vendetta by me to harass the defendant.

33. I was trying to represent my client in order for him to obtain damages for the way he was treated.

34. It is objectionable and without any basis whatsoever for Mr. Rader, in an unsavory fashion, to accuse me of not providing my client with any portion if the matter settled.

35. I believe that this baseless accusation forms the basis of support that the motion for sanctions is merely an exercise is vexatious litigation by Mr. Rader and his client.

36.    Mr. Rader was open to the idea of a settlement and asked me for authority for a basis for settlement.

37.    His statement that his client would not pay a dime is false.

38.    On November 7, 2011 Mr. Rader wrote the following to me.  As it could be argued that many of our emails were in the context of settlement discussions, I would request to provide those statement under seal, but will set forth one sentence which indicates that Mr. Rader did express an interest in settlement:  "But if you have **STATUTORY** authority, please pass it along and it may affect a settlement offer."

39.    Based upon this statement, it was my belief that at some point in time, Mr. Rader would present a settlement offer especially where I responded that 1692k addresses the statutory basis for statutory damages, attorney's fees and costs awarded to a successful plaintiff.

40.    Around that time, Mr. Rader also again invited me to drop the matter.  He did not state that even if I dropped the matter he would proceed with an application for attorney's fees.

41.    As the date for trial was coming closer, I started to consider the matter again as Mr. Rader and I had not been in contact for some time.

42.    I considered Mr. Rader's email in November, 2011 which I thought was asking me a favor drop the matter due to various circumstances.

43.    I thought that I had a few more days to submit what I thought would be a brief pre-trial submission as the issue of the inclusion of the unauthorized fee was fully briefed.

44.    Then I received Mr. Rader's submission.

45.     However, I did not open the submission as we were obligated to both submit our papers on the same day.

46.     I did not have knowledge as to the extent of his submission but assumed that it was brief.

47.     In no way did I purposefully delay the matter so that Mr. Rader would have to expend much more time before trial.

48.     I figured that essentially there would be one witness to testify as to the $25.00 charge.

49.     Due to my client's background, his apprehensiveness of appearing at trial especially where the part of the claim about which he was most passionate was dismissed, the fact that Mr. Rader had asked me to withdraw the matter, we decided to agree to withdraw the matter.

50.     I do wish to point out that had we prevailed at the trial or upon appeal, I could have submitted a fee application for quite a number of hours of work.

51.     As a private attorney general, a term for plaintiff's counsel used by various Courts in FDCPA matters, I felt that the proper course of action would be bring the matter to its conclusion and then consider appealing the denial of the summary judgment motion to bring back at least some of the dismissed claims, but due to the fact that Mr. Rader brought up financial issues which I took to mean that the defendant is not doing so well financially, and the fact of my client's apprehensiveness, I sacrificed

my wanting to win on at least one issue, and considering the matter globally, decided to withdraw.

52. During the pre-motion telephone conference, the Court wanted me to specifically set forth why we did not agree to withdraw the matter until after the defendant's submission.

53. I believe that I have set forth the reasons in a candid fashion.

54. In this matter it was the first time that I ever brought a claim against a debt collector under the Electronic Fund Transfer Act.

55. Initially the Court denied defendant's motion to dismiss this claim.

56. Despite Mr. Rader's arguing to the contrary, the Court found that the Act could apply to a debt collector.

57. This was a tremendous victory for consumers.

58. I wish to highlight some other accomplishments to demonstrate that I take FDCPA litigation seriously and bring actions in good faith and for the purpose of benefiting consumers and doing my part as a private attorney general to help the federal government regulate the collection industry.

59. Mr. Rader seems to take great exception to the issue of the charge of $25.00 which was demanded of my client.

60. However, I attach for this Court's inspection a transcript of a pre-motion conference before Judge Kuntz in the matter of Quinteros v. MBI.

61. In that matter, I brought an action against MBI where MBI has imposed a transaction fee for any consumer who chooses to pay by credit card or by check over the phone.

62. Judge Kuntz complimented me on my presentation of the case and then proceeded to discuss an attorney who challenged the credit card industry where there was a charge imposed of $0.50 for anyone who paid a credit card statement late.

63. He indicated how the attorney prevailed and that we should address those cases in our briefs.

64. I also append this response an oral transcript from a decision on a motion to dismiss in Johnson v. United Collection Bureau.

65. Judge Mauskopf denied defendant's motion to dismiss.

66. During the oral decision I was actually take aback at how the Court in that matter scrutinized the collection letter and found essentially that all allegations were not to be dismissed.

67. In addition, the Court complimented me on my ability to analyze a collection letter as well.

68. It is my belief that the decisions cited by Mr. Rader where the Court found against me were generally decisions of Courts which take a more critical view of the FDCPA.

69. However, I would like to point out that it was Judge Weinstein himself in Weber v. Computer Credit, who posed the question at oral argument as to whether a debt collector has the duty to remind the consumer of the right to dispute the debt where the debt collector sends the consumer a second letter within the thirty day dispute period.

70.     Ultimately, after we briefed that issue, Judge Weinstein dismissed the case.

71.     Subsequently, I understand because Judge Weinstein has senior status, he is able to choose which types of cases he will hear.

72.     For perhaps the last year or so or perhaps somewhat longer, Judge Weinstein recuses himself from FDCPA cases, at least I can attest to the ones brought by me.

73.     Mr. Rader failed to bring to the Court's attention all of the decisions in my favor.

74.     He fails to bring to this Court's attention the decision of Kalish v. Karp (appended hereto) where defendant's counsel aggressively criticized me in order to defeat our motion for class certification.

75.     The motion for class certification was granted and the decision was one of interest in the New York Law Journal.

76.     I understand that there are about 100 decisions rendered by judges in the Eastern District of New York in which I was plaintiff's counsel.

77.     I believe that many of those decisions have caused the collection industry and the American Collectors Association, a trade group of collection agencies, to change the debt collector's practices in order to treat consumers more fairly.

78.     I do not believe that such a record demonstrates that this matter was a strike suit.

79.     This matter, as set forth above, was brought by a consumer, not for just textual interpretations in a collection letter, but for actually having been maltreated in his good faith attempt to pay a debt.


Dated: Cedarhurst, New York
        August 9, 2012

                                        /s/
                                        _____
                                        Adam J. Fishbein (AF- 9508)